**STATE ex REA v BD. OF EDUCATION OF MADISON RURAL SCHOOL DIST.**

Ohio Appeals, 2nd Dist, Madison Co

No 150. Decided May 12, 1941

D. M. Richmond, London; S. E. Robison, London; H. H. Crabbe, London, for plaintiff-appellant.

Herbert D. Mills, Dayton; Oral J. Myers, Dayton, for defendant-appellee.

MONTGOMERY, J. (5th Dist.) sitting by designation.

## OPINION

By BARNES, J.

The above-entitled cause is now being determined as an error proceeding by reason of plaintiff's appeal on questions of law from the judgment of the Court of Common Pleas of Madison County, Ohio.

Plaintiff's petition was filed in the Common Pleas Court of Madison County December 17, 1940, and as filed, contained three separately numbered causes of action. Before the final submission causes of action numbers 1 and 3 were dismissed without prejudice, thereby leaving for determination the second cause of action only.

The first paragraph contains the usual formal allegations of a suit by a taxpayer: the request to the Prosecuting Attorney to bring the action and his refusal so to do.

The operative language of the second cause of action is as follows:

"SECOND CAUSE OF ACTION: Now comes the plaintiff and for his second cause of action says that the Madison County Board of Education on March 19, 1940, pursuant to the provisions of §4736 GC proceeded to consolidate the Paint Township Rural, the Oak Run Township Rural and the Union Township Rural School Districts into a consolidated rural school district to be known as the Madison Rural School District.

That no question of centralization has. ever been submitted to the electors at an election therefor as provided by §4726 GC. That notwithstanding the failure of the defendant Board of Education to submit said question of centralization to an election by the people, the defendant, Board of Education intends to centralize the schools of said district. and intends to and will, unless enjoined by this Court, issue and sell bonds and with the proceeds therefrom purchase a site and erect a centralized school building - in said district. That said bonds are now advertised for sale on December 20, 1940. That plaintiff is without adequate remedy at law."

The prayer of the petition, after deleting the portion applicable to the First and Third cause of action, is in substance as follows:

That the defendant Board of Education of Madison Rural School District be enjoined from centralizing the schools of the Madison School District until an election is duly had for that purpose and carried; that said defendant Board of Education be enjoined from selling bonds for the purpose of erecting a centralized school, and that it be enjoined from issuing notes in anticipation of the sale of bonds. That the defendant Board be enjoined from purchasing land to use for the erection of a centralized school building until an election is duly held for the purpose of centralizing the schools of said district; that the election already held for the purpose of issuing bonds for the erection of the centralized school building be declared null and void; that a temporary restraining order be issued, and for such other and further relief as he is entitled to in the premises.

The defendants' answer, in substance, avers the following:

It admits that the Madison County Board of Education on or about March 19, 1940, pursuant to the provisions of §4736 GC, created from Paint Township Rural, Oak Run Township Rural and Union Rural School Districts a new school district, the name of the same being the "Madison Rural School District".

Admits that no question of centralization was submitted to the electors of said territory as provided by §4726 GC; denies that such vote was necessary since said school district was created under §4736 GC; further avers that in the interest of serving the will of the people. a ballot was taken in each township affected, resulting in a total vote

of 387 for and 34 against consolidation.

Further ayers that the Board of Education of the newly created school district, in keeping with the purpose of its creation, provided plans and specifications for a new school building to serve said district and thereafter submitted to the voters of said district the question of issuing bonds for the purpose of constructing a fireproof school building and equipping the same, in the sum of $160,000.00; that a bond issue was submitted to the electors, under authority of the provisions of §2292-2 to 23, inclusive, on November 5, 1940; that at said election 875 votes were cast, of which 662 were for said bond issue and 213 votes were against, which was 86% of the total vote cast, as against 65% required by the statute.

That in keeping with the results of said election, said Board, by resolution, determined to proceed to issue bonds in the amount of $160,000.00 for said purpose, and advertised, as provided by law, for bids for the purchase of said bonds and received a bid of par and accrued interest, plus $2,848.85 premium, for $160,000.00 worth of bonds with interest at the rate of 2%, which bid by agreement of counsel, as evidenced by entry heretofore filed in this cause, has been accepted, contingent upon the outcome of this cause.

On motion, so much of the answer as refers to a ballot being taken in each of the townships affected was stricken.

The bill of exceptions is very short and presents the testimony of only three witnesses. Two members of the Board of Education of the newly created district were called for cross-examination. Over objections of defendant, they testified as upon cross-examination that it was expected that the prior rural schools located in the three rural districts would be abandoned and all pupils of school age transported to the new building when constructed.

Mr. R. E. Mikesell, County Superintendent of Schools, was also called as a witness, and through his examination it was developed that Union Township Rural School District lies adjacent to the London School District, and also gives the names and number of the separate schools now located in the new Madison Rural School District, together with the average daily attendance at each school. According to his testimony, the number of such schools is twelve, and all but two had an average daily attendance of more than ten, the highest being 64.56.

The question to be ultimately determined is clearly one of law.

It is undisputed that there was no attempt or intent to organize a new district under §4726 and cogent sections relative to centralization. The creation of the new district was exclusively under the provisions of §4736 GC. Sec. 4726 is appropriately referred to as the centralization section, while §4736 is spoken of as the consolidation section. Under the first section centralization can only be had by a majority vote of the electors within the territory; whereas under the consolidation section action may be taken by the Board of Education without a vote of the electors.

No question whatever is raised as to the regularity of the proceedings through which the consolidation was ordered and the new district formed.

It is the contention of counsel for plaintiff-appellant that the contemplated action of the new board looking to the purchase of a site, issuing bonds and building a new school house is in fact a centralization without the vote of the electors, and therefore unauthorized. However, counsel for plaintiff admit that the entire question turns on the proper construction of §7730 GC. The admission is further made that this section, prior to the last amendment, was broad enough to authorize actual centralization.

Attention is called to the amendment of 1921 (Ohio Laws, Vol. 109, page 288).

The first paragraph prior to the amendment reads as follows:

"7730. The board of education of any rural or village school district may suspend by resolution temporarily or permanently any or all schools in such village or rural school district because of disadvantageous location or any other cause, and teachers' contracts shall thereby be terminated after such suspension."

This paragraph now reads:

"Section 7730. The board of education of any rural or village school district may suspend by resolution temporarily or permanently any school in such district because of disadvantageous location or any other cause, and teachers' contracts shall thereby be terminated after such suspension."

It will be observed that the words "or all" are eliminated, and it is upon this elimination that counsel for appellant principally rely.

Practically the identical question presented in the instant case was before the courts of Fulton County in 1913. The case was not reported in the lower courts, but was entitled Bowers et al v the Board of Education of Fulton Township, and appears to have been affirmed by the Supreme Court without report in 78 Oh St 443. Counsel for plaintiff-appellant state in their brief that the following question was presented and settled:

A vote on centralization was held and voted down. The Board of Education, regardless of this vote, proceeded to centralize the schools, and action was brought to restrain such centralization. The lower court held that the plain wording of the statute allowed centralization by the Board and the Supreme Court affirmed the lower court.

This entire proposition is referred to in the opinion of the Attorney General, under date of September 16, 1913, found in the Annual Report of the Attorney General, Volume 2 (1913), page 1377. The Fulton County case is referred to in detail. The last paragraph of the opinion reads as follows:

"In answer to your third question, I am of the opinion that the abolishment of the schools in all the sub-districts in the township district by virtue of §§7730 and 7331 GC, and the establishment of new schools and the conveyance of pupils therein, operates as a centralization of the schools of the township, provided that no election has been held upon the question of centralization which resulted adversely to centralization and provided that a petition for such election has not been filed therefor in accordance with law."

In substance this opinion holds that the Board of Education has full power and authority under §7730 to effect the practical centralization of schools in a rural school district, provided no vote on centralization has been had.

Again referring to the amendment through which the words "or all" are eliminated, we are unable to conclude that the amendment, leaving out these two words, affects the substance. In our judgment the section is just as broad with the words out as in. In other words, the meaning is just the same where the section grants the power to the board to suspend any school as to say any or all.

If this was the only amendment contained in the section, then we would have to endeavor to find the logical reason and purpose for such change. This is upon the theory that when the Legislature makes an amendment it is presumed to be for a purpose.

Further along in the section, many other changes are made, but these are of substance. We think that in drafting the amendment, the words "or all"

were left out because they were considered surplusage.

Counsel in their brief point out many objections to the present controverted procedure, all of which would be eliminated if the board had proceeded under §4726 (the centralization section). So far as we are able to analyze the existing situation, we are frank to say that it would have been preferable to have proceeded under §4726 GC but finding as we do that the Board is not exceeding its authority in proceeding under §7730 GC it necessarily follows that there is not an abuse of discretion, and hence we have no power to enjoin.

We have been favored with the written opinion of the trial court, which we have carefully examined. We agree with the reasoning contained therein in its entirety.

Plaintiff-appellant's petition will be dismissed and costs adjudged against the plaintiff.

Entry may be prepared accordingly.

GEIGER, PJ., MONTGOMERY, J. (5th Dist.) sitting by designation, concur.

## APPLICATION FOR REHEARING

No 150. Decided May 24, 1941

BY THE COURT:

The above entitled cause is now being determined an applicant's application for rehearing. The motion is predicated upon the claim that the Court based its decision upon an alleged admission which plaintiff-appellant did not make.

In the first place counsel is in error in saying that our original opinion was predicated upon an admission of counsel.

However, in the original opinion we called attention to certain admissions made by counsel as preliminary to a further discussion of the ultimate question to be determined.

Secondly, we have very carefully reread the original brief of counsel for appellant and we find therein the admissions to which we referred in the original opinion.

Since the application for rehearing we have a letter from counsel qualifying his language in the application for rehearing, but emphasizing that the admission did not cover the statute as amended in 1921.

This is in accord with our understanding of appellant's position. On page 5 of our original opinion we called attention to §7730 as it was prior to the amendment of 1921, and immediately following is the amendment through which the words "or all" were left out. As we read counsel's brief the claim is emphasized that the removal of these words is substantial and required a modification of the principles announced in the Fulton case. We stated in our opinion and reiterate that we do not think that the amendment changes the substance of the section.

Application for a rehearing will be overruled.

GEIGER, PJ., BARNES, J., and MONTGOMERY, J. (5th Dist.), sitting by designation, concur.